<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In Re: | Case No.:   04-19875  (DHS) |
| THE CLASSICA GROUP, | Adv. No.:   05-01039  (DHS) |
| Debtor. | Judge:      Donald H. Steckroth, U.S.B.J. |

ROBERT B. WASSERMAN, CHAPTER 7
TRUSTEE FOR THE CLASSICA GROUP,
INC.,

Plaintiff,

v.

SCOTT HALPERIN, JOSEPH F. GREENE,
ALAN RUBIN, BERNARD M. LILLIS, JR.,
HAROLD FRIEDBURG, SHARON L.
LAMONT, C.P.A., AND CRAIG A. PASKO,

Defendants,

and

ADMIRALTY INSURANCE CO.,

Defendant.

**FILED**

JAMES J. WALDRON, CLERK

**SEPT. 29, 2006**

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY:  s/ Ronnie Plasner,  DEPUTY

<u>**OPINION**</u>

**APPEARANCES:**

Nagel, Rice & Mazie, LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068
***Special Counsel to Robert B. Wasserman, Chapter 7 Trustee***

Budd Larner, PC
150 John F. Kennedy Parkway
Short Hills, New Jersey 07078
***Attorneys for Joseph F. Greene, Alan Rubin,***
***Bernard F. Lillis, Jr., Harold Friedburg,***
***Sharon L. LaMont, C.P.A., and Craig A. Pasko***

Michael Chazen, PC
Freehold Executive Center
4400 Route 9 South, Suite 1000
Freehold, New Jersey 07728
***Attorney for Scott Halperin***

## THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE

Before the Court is a motion to dismiss certain counts of the adversary complaint for failure to state

a claim under Federal Rule of Civil Procedure 12(b)(6).  The motion was filed by Joseph Greene, Alan

Rubin, Bernard Lillis, Jr., Harold Friedburg, Sharon LaMont, and Craig Pasko, all former officers or

directors of The Classica Group, Inc., f/k/a Saratoga Brands, Inc., f/k/a Empire Specialty Foods, Inc.

(hereinafter "Classica Group" or "Debtor").  On July 6, 2005, Mr. Halperin joined the motion to dismiss

in whole (hereinafter referred to cumulatively as "Officers" or "Defendants").

On March 23, 2004, Classica Group filed a voluntary petition for relief under Chapter 7 of the

United States Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey.  On

March 26, 2004, this Court appointed Robert B. Wasserman as Chapter 7 Trustee (hereinafter "Trustee")

and entered an Order authorizing the Trustee to prosecute the instant claims.  On January 11, 2005, the

Trustee commenced this adversary proceeding by filing the complaint at issue.  Mr. Halperin, by and

through his attorney, served an answer to the adversary complaint consisting of an admission that he was

an officer of Classica Group and a general denial of all other allegations.

Classica Group is incorporated under the laws of New York,[1] with its principal place of business

in New Jersey.[2]  (*Complaint*, ¶ 6, *Certification of Christopher P. Anton in Support of Motion to

Dismiss, Pursuant to Federal Rule of Civil Procedure 12(b)(6)*, Exhibit "A") (hereinafter "*Complaint*").

---

[1] While the adversary complaint states that Classica Group was incorporated in New Jersey, a public records search indicates the company was incorporated in New York.  In addition, a public records search indicates that Classica Group was dissolved on December 31, 2003, via dissolution by proclamation.

[2] The statement of facts provided here is taken directly from the Complaint filed in the adversary proceeding since the standard on a motion to dismiss for failure to state a cause of action tests the sufficiency of the facts by assuming the truth of those alleged in the initial pleading.  *Fagin v. Gilmartin*, 432 F.3d 276, 281 (3d Cir. 2005) (internal citation omitted).

3

Debtor was a publicly traded holding company that operated at times up to three wholly-owned subsidiaries: Classica Microwave Technologies, Inc., Classica Group Technologies Italia, and Cuchina Classica Italia. (*Id.* at ¶¶ 6-10). At all relevant times and until October of 2003, Scott Halperin served as President and CEO of Classica Group.[3] Aside from his responsibilities as CEO, he was responsible for raising capital to support the research and development of new technologies. (*Id.* at ¶ 13). Bernard Lillis was the CFO of the Classica Group from 1996 to 2004, and CEO of the same from 2003 to 2004. His responsibilities as CFO included corporate accounting, financial affairs, SEC reports, ensuring Sarbanes-Oxley compliance, and preparing quarterly reviews and annual audits of the Debtor as well as its subsidiaries. (*Id.* at ¶ 14).

From 2000 to 2002, the Debtor derived almost all of its income from its cheese importing and manufacturing company, Cuchina Classica Italia. (*Id.* at ¶ 15). Classica Microwave Technologies, Inc. continued to lose significant sums of money until its voluntary petition for bankruptcy in March of 2004. (*Id.* at ¶ 16). Classica Group Technologies Italia was the research arm of the corporation and was by definition unprofitable. (*Id.* at ¶ 12). As a result, Classica Group incurred overall losses in fiscal years 2001 and 2002. (*Id.* at ¶ 17). During that time, Directors Halperin and Lillis continued to benefit from their substantial compensation packages and accepted significant increases to those packages despite the Debtor's mounting losses. (*Id.*).

---

[3] The Trustee alleges in the complaint that Mr. Halperin served as CEO of Classica Group until October of 2004. (*Id.* at ¶ 13). He then goes on to allege that Mr. Lillis took over as CEO in or around October of 2003. (*Id.* at ¶ 14). The Court will assume for the purposes of this motion that Mr. Halperin resigned from his position as CEO in October of 2003 after being indicted on counts of securities fraud and related charges. (*Id.* at ¶¶ 29-31).

In a desperate effort to raise revenue, Mr. Halperin initiated an advertising campaign directed at the anthrax scare following the terrorist attacks of September 11, 2001.  The thrust of the campaign was that the microwave technology developed at Classica Microwave Technologies, Inc. was able to kill anthrax. (*Id.* at ¶ 19).  The campaign resulted in two press releases by the Debtor.  On October 11, 2001, Classica Group indicated that its microwave technology "is absolutely capable of killing anthrax" and that it was developing a mail processing system that "could prevent a biological disaster similar to the one that recently occurred in Florida." (*Id.*).  On October 12, 2001, Debtor issued a second release stating that it had "completed the basic design of a system which we believe is capable of killing biological bacteria, including anthrax in mail." (*Id.*).  Classica Group failed to test its microwave technology's effectiveness for killing anthrax prior to issuing the press releases. (*Id.*).  Upon learning of the press releases, the SEC began an investigation concerning misrepresentations contained in them, which resulted in issuance of a cease and desist order relating to claims that the microwave technology could kill anthrax. (*Id.* at ¶¶ 20-21).  The Debtor's stock price suffered because of the advertising campaign and subsequent SEC action. (*Id.* at ¶ 21).

Due to continuing losses, Classica Group decided to conduct a private placement of its shares near the end of 2002.  The offering lasted until September of 2003 and raised $1,850,000. (*Id.* at ¶ 24).  Instead of investing these funds, or any part thereof, into its only profitable subsidiary, Cuchina Classica Italia, the money was divided between the two unprofitable subsidiaries. (*Id.*).  In addition, the Debtor decided to sell Cuchina Classica Italia in 2003 at a "significant discount." (*Id.* at ¶ 25).  Despite the revenue from the sale, Classica Group continued to flounder. (*Id.* at ¶ 26).  However, while the Classica Group was "virtually insolvent," Mr. Halperin chose to move the corporate office to a

5

"state-of-the-art-facility," which required a loan of $325,000 from the Pinnacle Group. (*Id.* at ¶¶ 27-28).

The loan carried an interest rate of 16% and included an origination fee of $45,000 as well as an advisory

fee of $25,000.  (*Id.* at ¶ 28).  Moreover, Directors Lillis and Halperin continued to "drain" the Classica

Group's assets by accepting their combined salaries of approximately $500,000 annually.  (*Id.* at ¶ 26).

In October of 2003, Mr. Halperin was indicted on multiple counts of securities fraud and related

charges that included alleged manipulation of the Debtor's share price.  (*Id.* at ¶ 29).  As a result, the

company's stock price plummeted, trading of the shares was halted, and the stock was delisted.  (*Id.* at ¶

30).  Mr. Halperin summarily resigned and Mr. Lillis took over as CEO of Classica Group.  (*Id.* at ¶ 31).

"His only alternative appeared to be a sale of the Classica Group." (*Id.*)  Instead, the company continued

to incur losses and "drain" remaining assets for a period of six months before filing for bankruptcy protection

in March of 2004.  (*Id.* at ¶ 32).  During the period from October of 2003 to March of 2004, the Debtor

continued to pay full salaries to its directors and officers, indemnified Mr. Halperin for his criminal attorney's

fees to the extent of $100,000, and made a payment to a friend of Mr. Halperin's, Steve Weiss, for matters

allegedly unrelated to the Debtor's business.  (*Id.* at ¶ 33).

Until 2003, Classica Group did not hold formal Board meetings, did not regularly keep Board

minutes, and did not record the votes of the Board of Directors.  In fact, the Board was rarely consulted

regarding decisions relating to Classica Group.  (*Id.* at ¶ 18).

The Trustee's adversary complaint contains thirteen counts.[4]  As a preliminary note, counts One,

Two and Three involve claims against Admiralty Insurance Company, and are not the subject of this motion.

As such, they will not be addressed.

---

[4] The thirteen counts of the complaint are summarized as follows:

Officers Lillis, Greene, Rubin, Friedburg, LaMont, and Pasko now move to dismiss count Eight;

Mr. Lillis moves to dismiss counts Five, Six, Seven, Ten, and Eleven that identify him personally; and

officers Lamont and Pasko each move to dismiss count Nine. (*Defendants' Memorandum of Law in*

*Support of Motion to Dismiss for Failure to State a Claim*, pp. 2-3) (hereinafter "*Defendants'*

*Memorandum*"). Defendants allege that these counts should be dismissed because they are barred by the

business judgment rule, do not meet the heightened pleading requirements of New York law, and are

redundant. In addition, Officers Lillis, Greene, Rubin, Friedburg, LaMont and Pasko move to dismiss count

Nine on the basis that it lacks both an *ad damnun* clause and a prayer for relief. (*Defendants'*

*Memorandum*, pp. 2-3).

The relief Mr. Halperin seeks is unclear. The entire relevant portion of Mr. Halperin's letter to the

Court is as follows:

> Please note that Mr. Halperin joins in the motion to dismiss for failure to
> state a claim upon which relief can be granted. In this regard, I refer the
> court to the instructive authority cited in <u>Auerbach v. Bennett</u>, 47 N.Y.2d

---

1.    Claim against Classica Group's insurer for payment under the policy as a result of corporate misfeasance.

2.    Claim against Classica Group's insurer under breach of contract for failure to make the policy payments.

3.    Joinder of all Officers due to their interest in the insurance policy as named insureds.

4.    Claim against Mr. Halperin for breach of fiduciary duty.

5.    Claim against Mr. Lillis for breach of fiduciary duty.

6.    Claim against Directors Halperin and Lillis for corporate mismanagement.

7.    Claim against Directors Halperin and Lillis for breach of the duty of care.

8.    Claim against all Officers for breach of the duty of care.

9.    Claim against Officers LaMont and Pasko for breach of the duty of care.

10.    Claim against Directors Halperin and Lillis for misappropriation of corporate assets.

11.    Claim against Directors Halperin and Lillis for breach of their respective employment contracts.

12.    Claim against Mr. Halperin for avoidance and recovery of fraudulent transfers under 11 U.S.C. § 544 and N.J.S.A. 25:2-27(a).

13.    Claim against Mr. Halperin for avoidance and recovery of fraudulent transfers under 11 U.S.C. § 548.

*(See generally Complaint).*

629 (N.Y. 1979) and <u>Patrick v. Allen</u>, 355 F. Supp. 2d 704, 710
(S.D.N.Y. 2005).  The motion is properly granted.

(*Letter of Michael Chazen, dated July 6, 2005*).  As far as can be determined, Mr. Halperin seeks to join

in the arguments made by the other officers and use them as his own in attempting to dismiss the counts of

the complaint which implicate him.  In the instances where Mr. Halperin is grouped with all other defending

officers, their general arguments as to dismissal based upon the business judgment rule, insufficiency of the

pleading, and redundancy are applicable to him.  As a result, this Court will include Mr. Halperin in its

consideration of the arguments set forth in counts applicable to other Officers, namely Five and Eight.[5]

As this Chapter 7 adversary complaint involves administration of the Debtor's estate, recovery of

estate property, and the reclamation of preferences as well as fraudulent conveyances, this Court concludes

that the complaint filed by Robert B. Wasserman, as Trustee for the Classica Group, is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2)(A, E, F, H, and/or O) and is properly before the Court.

---

[5] However, the same cannot be said for the counts identifying Mr. Halperin individually.  Counts Four,
Twelve, and Thirteen were neither objected to in the moving papers, nor in Mr. Halperin's letter to the Court.
Therefore, these counts are not the subject of the within Opinion.  Additionally, counts Six, Seven, Ten, and Eleven
name Directors Halperin and Lillis individually.  However, neither the other Officers' moving papers, nor Mr.
Halperin's letter to the Court, make an argument on his behalf with respect to these counts.  Instead, Halperin's
counsel merely points the Court to two decisions that maintain no singular applicability to Mr. Halperin.  This Court
is not prepared to speculate or fashion a legal argument on Mr. Halperin's behalf.  As a result, Mr. Halperin will not
benefit from any analysis as to counts Six, Seven, Ten, and Eleven.

## LEGAL CONCLUSION

### A.  Motion to Dismiss Standard

Having decided that this matter is properly within the purview of this Court, the subsequent inquiry is whether the Trustee of Classica Group has filed a claim sufficient to withstand a motion to dismiss. Pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to this Court by Federal Rule of Bankruptcy Procedure 7012, a plaintiff's complaint must be dismissed for failure to state a claim upon which relief can be granted if a defendant demonstrates "beyond a doubt that [the] plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief." *Griesenbeck v. Am. Tobacco Co.*, 897 F. Supp. 815, 819 (D.N.J. 1995) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  All allegations set forth in the complaint must be accepted as true and all reasonable inferences must be viewed in the light most favorable to the plaintiff.  *Fagin*, 432 F.3d at 281 (internal citation omitted); *Griesenbeck*, 897 F. Supp. at 819 (citing *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir. 1991)).

A federal court reviewing the sufficiency of a complaint on a motion to dismiss has a limited role.  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support his [or her] claims." *Syncsort, Inc. v. Sequential Software, Inc.*, 50 F. Supp. 2d 318, 325 (D.N.J. 1999) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court is limited to the facts alleged in the complaint, not those raised for the first time by counsel in its legal memorandum.  *Griesenbeck*, 897 F. Supp. at 819 (internal citations omitted).

In order to grant a 12(b)(6) motion to dismiss, the court must find that the plaintiff will be unable to prevail even if he or she proves all of the allegations in the complaint, basing its decision solely on the legal sufficiency of the complaint. *Polling v. K. Hovnanian Enters.*, *et al.*, 99 F. Supp. 2d 502, 507 (D.N.J. 2000) (internal citation omitted); *see also Syncsort, Inc.*, 50 F. Supp. 2d at 325 ("A complaint may be dismissed for failure to state a claim where it appears beyond any doubt that no relief could be granted under any set of facts which could be proved consistent with the allegations [of the complaint].") (internal citations omitted).

## B.  Choice of Law

Before considering the substance of this motion as to the implicated counts of the complaint, this Court must first determine the preliminary choice of law issue.  Defendants assert that New York law governs as Classica Group is incorporated in New York and the law of the state of incorporation governs the internal affairs of a corporation.  The Trustee argues that New Jersey law governs due to the many significant events that occurred in New Jersey.

When a conflict of laws question is presented, a federal court is bound to apply the law regarding conflicts of laws of the state in which it sits.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *NL Indus., Inc. v. Commercial Union Ins. Co.*, 65 F.3d 314, 316 (3d Cir. 1995).

> Generally stated, the local law of the state of incorporation will be applied to determine the existence and extent of a director's or officer's liability to the corporation, its creditors and shareholders, except where, with respect to the particular issue, some other state has a more significant relationship . . . to the parties and the transaction, in which event the local law of the other state will be applied.

10

RESTATEMENT (SECOND) CONFLICT OF LAWS § 309 (1971); *see also Francis v. United Jersey Bank* 87

N.J. 15, 27-28 (1981); *Tabas v. Mullane*, 608 F. Supp. 759, 764 (D.N.J. 1985).

New Jersey "applies a flexible 'governmental-interest' standard, which requires application of the

law of the state with the greatest interest in resolving the particular issue that is raised in the underlying

litigation." *Gantes v. Kason Corp.* 145 N.J. 478, 484 (1996) (internal citations omitted).  In *Republic*

*of Phil. v. Westinghouse Elec. Corp.*, 774 F. Supp. 1438, 1448 (D.N.J. 1991) the District Court for the

District of New Jersey explicated the governmental-interest standard.

> This court has interpreted [*Heavner v. Uniroyal, Inc.*, 63 N.J. 130, 140-41 (1973)] as adopting the 'governmental interest approach' to resolving conflicts of law (sic). . . .  *Henry v. Richardson-Merrell, Inc.*, 508 F.2d 28, 32 (3d Cir. 1973).  The court determines first the governmental policies evidenced by the laws of each related jurisdiction and second the factual contacts between the parties and each related jurisdiction.  *Id.* Quite clearly, this second step requires the balancing of various factual contacts.  *Id.* at 35.
>
> . . . .
>
> It requires the balancing of all five factors . . . (1) where the cause of action arose; (2) amenability to suit in other states; (3) the substantial interest, if any, of New Jersey in the suit; (4) which state's substantive law will apply; and (5) whether the other state's limitations statute has run.

*Republic of Phil.*, 774 F. Supp. at 1448 (quoting *Allen v. Volkswagen of Am., Inc.*, 555 F.2d

361, 362-63 (3d Cir. 1977) (per curiam).

*Francis v. United Jersey Bank*, 162 N.J. Super. 355 (Law Div. 1978), *aff'd*, 171 N.J. Super.

34 (App. Div. 1979), *aff'd*, 87 N.J. 15, 27-28 (1981), is instructive on the choice of law issue.  In

*Francis*, plaintiffs, as bankruptcy trustees, sued the representatives of debtor  Pritchard & Baird

Intermediaries Corp. in their individual capacities on theories of breach of fiduciary duties and fraudulent

conveyances.  In determining that New Jersey law should apply, Judge Stanton stated, in relevant part:

> I conclude that in this case we should follow the exception stated to § 309
> rather than the basic rule stated in that section.  Throughout most of the
> period in question the corporation conducted its basic operations in New
> Jersey and had no significant contact with New York, apart from the fact
> of its incorporation there.  All shareholders of the corporation have always
> been New Jersey residents.  Virtually all of the transactions involved took
> place entirely within New Jersey. All of the recipients of the payments have
> always been residents of New Jersey, [with the exception of one person
> for a limited period of time].  . . .[T]he bankruptcy proceedings involving
> the corporation [two individual corporate representatives] are being
> administered in the United States District Court for the District of New
> Jersey.  Although many of the creditors are located outside New Jersey,
> all of them had New Jersey contacts with Pritchard & Baird.  In short,
> New Jersey has had *many more significant relationships* with the
> parties and with the transactions involved than has New York.

*Id.* at 369.

In undertaking the governmental interest approach to resolving a conflict of laws, the Court must

first determine the policies of the law at issue in all related jurisdictions.  *Republic of Phil.*, 774 F. Supp.

at 1448.  The business judgment rule is applicable to the actions of corporate directors despite their

location.  The purpose of the business judgment rule is to protect corporate directors from personal liability

that would result from second-guessing undertaken by courts with the benefit of 20/20 hindsight and to

promote the free exercise of managerial power.  *PSE & G S'holder Litig. v. Codey, et al. (In re PSE*

*& G S'holder Litig.)*, 173 N.J. 258, 276-77 (2002) (internal citation omitted); *N.Y. Credit Men's*

*Adjustment Bureau, Inc., as Tr. in Bankr. of W.F. Irish Co., Inc. v. Weiss*, 305 N.Y. 1, 12-13 (1957).

The Debtor is incorporated under the laws of the state of New York.  Director Harry Friedburg was at all relevant times a resident of the State of New York.  However, this is where Classica Group's connections to New York end.  During the entire period in question, Classica Group maintained its principal place of business in New Jersey, conducted its operations in New Jersey, and had no significant contact with New York.  With the exception of Director Joseph Greene, who was at all relevant time a resident of Florida, all other Classica Group Officers, including Mr. Halperin, were residents of the State of New Jersey.[6]

All of the alleged transactions took place in New Jersey.  *Memorandum Of Law In Opposition To The Motion To Dismiss Of Defendants Joseph F. Greene, Alan Rubin, Bernard M. Lillis, Jr., Harold Friedburg, Sharon L. LaMont, C.P.A. And Craig A. Pasko For Failure to State A Claim*, p. 15 (hereinafter "*Trustee's Brief In Opposition*").  As such, the instant causes of action accrued in New Jersey.  On March 23, 2004, Classica Group filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey.  For over two years, this Court has presided over the Debtor's bankruptcy case.  While only a handful of Classica Group's creditors are located in New Jersey, all had contacts with New Jersey arising from Debtor's chosen principal place of business.  "In short, New Jersey has had *many more significant relationships* with the parties and with the transactions involved than has New York."  *Francis*, 162 N.J. Super. at 369 (emphasis added) (internal citation omitted), *aff'd*, 171 N.J. Super. 34 (App. Div. 1979), *aff'd*, 87 N.J.

---

[6] Officers Halperin, Lillis, Rubin, LaMont and Pasko are assumed to be residents of New Jersey, as neither Mr. Halperin nor the Officers listed here contest this fact.  *Memorandum of Law In Reply To Memorandum Of Law In Opposition To Motion To Dismiss For Failure To State A Claim*, p. 4.

15, 27-28 (1981). In reality, New York has little or no relationships with the parties or the transactions.

Under these circumstances, this Court holds that New Jersey law applies to the instant motion to dismiss.[7]

### C. Business Judgment Rule

As previously discussed, this Court will apply the law of the State of New Jersey to all substantive claims in the instant motion to dismiss. Preliminarily, it must be determined whether the "business judgment rule" can be asserted on a motion to dismiss. Courts that have refused dismissal based their determination on the fact-intensive nature of the required inquiry and the lack of a developed record in early stages of litigation. Generally, a court "will not rely on an affirmative defense such as the business judgment rule to trigger dismissal of a complaint under Rule 12(b)(6). See *In re Adams Golf, Inc. Secs. Litig.*, 381 F.2d 267, 277 (3d Cir. 2000). A complaint may be dismissed under Rule 12(b)(6) where an unanswered affirmative defense appears on its face, however." *Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) (citing *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994)).

The business judgment rule is codified in N.J.S.A. § 14A:6-1, and states in relevant part:

---

[7] In addition, the Court notes that common law claims regarding corporate governance and mismanagement are typically analyzed under the internal affairs doctrine. However, the claims in the instant case are brought by the Trustee on behalf of creditors, and not by officers, directors, or shareholders of Classica Group. "For this reason, the Court finds that the [Trustee's common law claims] are not subject to the internal affairs doctrine and that New Jersey law applies. Under New Jersey law, a debtor typically owes no extracontractual duties to a creditor unless the debtor is insolvent." *Palladin v. Gaon*, 2006 U.S. Dist. LEXIS 59844, at *50-52 (D.N.J. August 22, 2006) (citing *Francis*, 87 N.J. at 36); *see also Bd. of Trs. v. Foodtown, Inc.*, 296 F.3d 164, 173 (3d Cir. 2002). This Court is in accord with a recent trend in the law, which expands the fiduciary duties of a corporate director or officer to include not only equity holders, but creditors as well, when a corporation is in the "zone of insolvency." *See Carrieri v. Jobs.com*, Inc., 393 F. 3d 508, 534 n.24 (5th Cir. 2004); *Roselink Investors, L.L.C. v. Shenkman*, 386 F. Supp. 2d 209, 215 (S.D.N.Y. 2004); *Official Comm. of Unsecured Creditors v. Fleet Retail Fin. Group*, 280 B.R. 90, 92 (Bankr. D.Del. 2002); *Weaver v. Kellogg*, 216 B.R. 563, 583-84 (Bankr. S.D. Tex. 1997); *Growe v. Bedard*, 2004 U.S. Dist. LEXIS 23746, at *23 (D.Me. November 23, 2004). While the Trustee must prove his allegations that Classica Group was operating in insolvency or the zone of insolvency at trial to benefit from expanded fiduciary duties, his current claims as to both suffice to survive a motion to dismiss. *Id.*; *Palladin,* 2006 U.S. Dist. LEXIS 59844 at *52.

> (2) In discharging his duties to the corporation and in determining what he
> reasonably believes to be in the best interest of the corporation, a director
> may, in addition to considering the effects of any action on shareholders,
> consider any of the following: (a) the effects of the action on the
> corporation's employees, suppliers, creditors and customers; (b) the
> effects of the action on the community in which the corporation operates;
> and (c) the long term as well as the short-term interests of the corporation
> and its shareholders, including the possibility that these interests may best
> be served by the continued independence of the corporation.

*Id.*  The purpose of this rule is to protect corporate directors from being second-guessed as to corporate affairs with the benefit of 20/20 hindsight, in the interest of "promot[ing] and protect[ing] the full and free exercise of the power of management given to the directors." *In re PSE & G S'holder Litig.*, 173 N.J. at 276-77 (2002) (quoting *Maul v. Kirkman*, 270 N.J.Super. 596, 614 (App. Div. 1994) (internal citation omitted)).  The business judgment rule applies equally to corporate directors and officers. *In re Tower Air, Inc.*, 416 F.3d at 238 (internal citation omitted).

"In order to be protected by the business judgment rule, the directors [and officers] making a business decision must have become fully informed and acted in 'good faith and in the honest belief that their actions are in the corporation's best interest.'" *In re PSE & G S'holder Litig.*, 315 N.J.Super. 326, 328 (Ch. Div. 1998), *aff'd* 173 N.J. at 258 (emphasis in original removed) (internal citation omitted).  In addition, their actions must not be tainted with the interest of "fraud, self-dealing, or unconscionable conduct." *Id.*, 173 N.J. at 276-77 (quoting *Maul*, 270 N.J. Super. at 614). Moreover, the business judgment rule does not apply to decisions which lack a business purpose, or are fraught with a conflict of interest "so egregious that they amount to a no-win decision, or result from an obvious and prolonged failure to exercise oversight or supervision." *Resolution Trust Corp. v. Hovnanian*, 1194 U.S. Dist. LEXIS

19359, at *20 (D.N.J. October 13, 1994) (internal citation omitted).  Therefore, the business judgment rule

is commonly referred to as requiring grossly negligent acts to trigger personal liability, such as directors who

"completely abdicate their duties and fail to exercise any judgment. . . ."  *Id.* at *21 (internal citation

omitted).

In the case at bar, Defendants argue that the business judgment rule insulates them from liability as

a matter of law for three reasons: (i) the actions complained of are routine business transactions, (ii) certain

counts of the complaint allege mere negligence, and (iii) redundancy of the claims.[8]  However, contrary to

the Defendants' assertions, the Trustee's complaint contains numerous allegations of gross negligence,

abdication of duties, or abdication of judgment, all of which are sufficient to overcome the business

judgment rule.  *Id.* (internal citation omitted).

Directors Halperin and Lillis consciously accepted significant increases to their compensation

packages at a time when the corporation was incurring substantial losses and nearing the brink of

insolvency.  Mr. Halperin spearheaded an advertising campaign of the Debtor's microwave technology with

the aim of marketing it for widespread use as a defense to the anthrax panic of 2001.  Moreover, Mr.

Halperin did so without first determining if the technology could effectively kill anthrax and with a blind

ambition to resurrect the company from dire financial straits.  Officers of Classica Group then decided to

conduct a private placement, which generated $1,850,000.  However, instead of investing this large influx

of capital into the only profitable arm of the Debtor, the Defendants opted to invest it into Classica Group's

unprofitable and research subsidiaries.  In addition, Defendants then approved the sale of the profitable

---

[8] Defendants' mistakenly argue that count Eleven, which alleges breach of contract as against Messrs. Halperin and Lillis, requires dismissal under the business judgment rule.  Breach of contract is a common law claim and is not the subject of a business judgment rule analysis, which focuses strictly on matters of corporate

16

subsidiary, Cuchina Classica Italia, at a significant discount. While the company continued to flounder and

may have been insolvent, the Defendants opted to move the principal place of business to a state-of-the-art

facility, which required a loan totaling $395,000 at an interest rate of 16%. As a result of the above

activities, Classica Group's share price plummeted, its trading was halted, and it was eventually delisted.

With ever increasing debts, impending insolvency, and the indictment of Mr. Halperin on charges

of securities fraud for his manipulation of the Debtor's share price, among other things, Mr. Lillis assumed

the position of CEO. Instead of aggressively leading the Debtor back to financial health, or in the alternative

filing bankruptcy, Mr. Lillis took no immediate action. Only six months later did he take action, choosing

to file bankruptcy on behalf of Classica Group. Just prior to the filing, however, the Defendants indemnified

Mr. Halperin of $100,000 in attorney's fees, which is alleged to be reckless, if not wanton, misfeasance.

As a final blow, Classica Group failed to hold Board meetings, regularly keep Board minutes, or record

the votes of the Board of Directors until 2003. These activities hardly constitute routine business decisions

as alleged by the Defendants and, therefore, defeat the instant motion to dismiss.

Defendants also assert, correctly, that general claims of negligence against corporate directors are

barred by the business judgment rule as a matter of law. *Id.* at *22-23. Counts Seven, Eight, and Nine

of the complaint each contain a caption below the header that categorizes each as a "Negligence" claim.

*Complaint* at pp. 14-16. However, the substance of the counts asserts that the named defendants owed

a "duty of care in carrying out their responsibilities as officers and directors of Classica Group," and that

the named individuals breached that obligation by the acts listed in each count. *Id.* The Federal Rules of

---

governance.

Civil Procedure reject the notion that pleading is a technical skill where one misstep by counsel can prove fatal. *Conley*, 355 U.S. at 48 (internal citation omitted). Instead, pleading merely facilitates proper decision upon the merits of claims. *Id.* It would seem to this Court that the essence of pleading relates to the factual and substantive allegations asserted in the claim itself. Therefore, this Court will give substantial weight to the substance of the counts, rather than their title captions, and will treat counts Seven, Eight, and Nine as allegations of breach of the fiduciary duty of care required of directors and officers.

The Defendants' then argue for dismissal because of redundancy of the counts of the complaint. This allegation has merit with regard to Defendant Lillis.[9] He is purported to have breached his fiduciary duties in counts Five, Seven, and Eight of the complaint. *Complaint* at pp. 12-15. In addition, count Seven simply incorporates the alleged acts "as outlined in the Fourth, Fifth, and Sixth Counts above." *Complaint* at p. 14. Breach of the duty of care is necessarily incorporated in a general allegation of breach of fiduciary duties. Therefore, because the Trustee re-alleges a previously incorporated claim based upon identical factual allegations, count Seven is hereby dismissed with prejudice as to Defendant Lillis for redundancy.[10]

---

[9] This Court recognizes that Defendant Halperin is also the named subject of two counts, Four and Seven, which allege breach of fiduciary duties and incorporate identical facts and allegations. However, as discussed above, Mr. Halperin's meager attempt to join in this motion has only garnered the use of the remaining Defendants' legal argument as to counts that are inclusive of all Defendants, including Mr. Halperin. Therefore, since count Four, breach of fiduciary duty against Halperin, is not contested here, the Court has no opportunity to consider its possible redundancy when combined with count Seven. Additionally and as stated previously, Directors Greene, Rubin, Friedburg, LaMont and Pasko are each the subject of one claim concerning breach of fiduciary duty. Therefore, they do not benefit from any redundancy argument.

[10] However, the same cannot be said for count Eight, which identifies additional allegations of misfeasance. *Complaint* at 12-13, 15-16. Therefore, any claim of redundancy as to count Eight is rejected.

### D.  Pleading Requirement

Federal Rule of Civil Procedure 8(a) sets out the pleading standard applicable in federal court:

> A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks.  Relief in the alternative or of several different types may be demanded.

*Id.*  The United States Supreme Court made clear in *Hanna v. Plumer*, 380 U.S. 460 (1965), that federal pleading standards apply in federal court.  *In re Tower Air, Inc.*, 416 F.3d at 237 n.11 (citing *Ingersoll-Rand Fin. Corp. v. Anderson*, 921 F.2d 497, 501 (3d Cir. 1990) ("Since [the plaintiff's] action was brought in federal court, the Federal Rules of Civil Procedure govern the sufficiency of the pleadings."); *Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 135 (3d Cir. 2002) (noting that under *Hanna* "federal courts apply on-point Federal Rules of Civil Procedure instead of state procedural practices."); 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004) ("Federal law governs whether a complaint in a federal court action states a claim for relief with the requisite particularity.")).  The lesson taken is that a plaintiff in federal court need only plead the basic facts necessary to provide fair notice of his or her claims and the grounds upon which they rest.  *In re Tower Air, Inc.*, 416 F.3d at 237 (citing *Conley*, 355 U.S. at 47; *Alston v. Parker*, 363 F.3d 229 (3d Cir. 2004)).

> [A] plaintiff will not be thrown out of court on a Rule 12(b)(6) motion for lack of detailed facts.  To say that a plaintiff's claim appears factually weak is not to say that he states no claim.  That truism is particularly obvious where, as here, a defendant's motion to dismiss articulates the plaintiff's

claims that supposedly lack factual support.  *See Alston*, 363 F.3d at 234.
 To hold otherwise would be effectively to transform Rule 12(b)(6)
motions into multi-purpose summary judgment vehicles.  That we will not
do.

*In re Tower Air, Inc.*, 416 F.3d at 237-38.

In the instant motion, it must be determined whether the Trustee has enumerated his claims via a

short and plain statement of jurisdiction, entitlement to relief, and demand for relief.  FED. R. CIV. P. 8(a).

 In paragraph Eleven of the complaint, the Trustee provides a satisfactory statement of jurisdiction as to all

counts by correctly citing 28 U.S.C. §§ 1334 and 157(b)(2)(A, H, and/or O) as bases for jurisdiction.

Second, all counts at issue provide a short and plain statement of entitlement to relief.  The Trustee

begins by reciting extensive facts illustrating Classica Group's need for liquid capital, the allegedly fraudulent

advertising scheme to generate the same, and the downward spiral towards bankruptcy filing.  The Trustee

then incorporates these global facts into each count.  Next, the Trustee details in each count, by numbered

paragraph or reference to other counts, which specific acts necessitate the relief sought against each

particular defendant.  Lastly, the Trustee comes to a legal conclusion in each count as to the misfeasance

of each named defendant.  Accordingly and in model fashion, the Trustee has alleged "basic facts necessary

to provide fair notice of the plaintiff's claims and the grounds upon which they rest. . . ."  *Complaint* at ¶¶

12-35; *In re Tower Air, Inc.*, 416 F.3d at 237 (citing *Conley*, 355 U.S. at 47; *Alston*, 363 F.3d at 229)).

The third prong of Federal Rule of Civil Procedure 8(a) requires the Trustee to make a sufficient

demand for relief.  In count Ten, the Trustee demands disgorgement against Defendants Lillis and Halperin

of the excessive salaries paid to them while Classica Group was nearing insolvency and for attorneys' fees

wrongly paid as indemnification for alleged criminal acts.  *Complaint* at p. 17.  Counts Five, Six, Seven,

and Eleven contain customary language demanding relief in the form of damages, attorney's fees, court

costs, and any other relief the Court finds equitable and just.  *Id.* at pp. 13-15, 18.  Inclusion of these forms

of relief is routine practice and meet the third requirement of Federal Rule of Civil Procedure 8(a).

Accordingly, counts Five, Six, Seven and Eleven meet the particularity requirements of notice pleading in

federal court and survive the instant motion to dismiss.  *Id.*; *In re Tower Air, Inc.*, 416 F.3d at 237-38.

The same cannot be said for counts Eight and Nine.  Count Eight alleges a breach of the duty of

care owed to Classica Group by its Officers Halperin, Lillis, Greene, Rubin, and Friedburg.  *Complaint*

at pp. 15-16.  Count Nine repeats the same allegation against Officers LaMont and Pasko.  *Id.* at pp. 16-

17.  However, neither count contains a demand for relief.  In addition, count Eight lacks an *ad damnum*

clause.  As a result, both counts fail the requirement set forth in Federal Rule of Civil Procedure 8(a),

namely that a "pleading which sets forth a claim for relief . . . shall contain a demand for judgment for the

relief the pleader seeks." *Id.*  Count Eight is hereby dismissed without prejudice as to Defendants Halperin,

Lillis, Greene, Rubin and Friedburg.  Count Nine is hereby dismissed without prejudice as to Defendants

LaMont and Pasko.

Federal Rule of Civil Procedure 15(a) is instructive when determining whether to permit leave to

amend a pleading after a responsive pleading is served, and states in relevant part:

> A party may amend the party's pleading once as a matter of course at any
> time before a responsive pleading is served. . . .  Otherwise, a party may
> amend the party's pleading only by leave of court or by written consent of
> the adverse party; and leave shall be freely given when justice so requires.

*Id.* "The Federal Rules [of Civil Procedure] reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley*, 355 U.S. at 48 (internal citation omitted). Instead, the Federal Rules of Civil Procedure provide a theme of liberality in the application of its rules. *Lundy v. Adamar of N.J.*, 34 F.3d 1173, 1186 (3d Cir. 1994). The pleading rules are designed merely to provide fair notice to parties and require liberal construction and amendment. *Id.* (internal citations omitted in original). "An inadvertent mistake in a pleading will not be held against the pleader if another party has not been misled by the mistake or otherwise prejudiced." *Id.* (citing 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1286, at 558-59 (2d ed. 1990)). "The federal rules are designed to discourage battles over mere form and to sweep away needless procedural controversies that either delay a trial on the merits or deny a party his day in court because of technical deficiencies." *Lundy*, 34 F.3d at 1186 (citing 4 JAMES WM. MOORE & JO D. LUCAS, MOORE'S FEDERAL PRACTICE P § 1029, at 118 (2d ed. 1994)). The Trustee requested this alternative form of relief in his opposition papers, which was never opposed. *Trustee's Brief in Opposition*, p. 20. Therefore, this Court will grant the Trustee leave to amend counts Eight and Nine.

For the reasons set forth above, the Motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is denied except as to: (i) count Seven which is hereby dismissed with prejudice as to Defendant Lillis, and (ii) counts Eight and Nine which are hereby dismissed without prejudice as to all Defendants named therein, and the Trustee is hereby granted fifteen (15) days to submit an amended complaint as to counts Eight and Nine.

22

An Order in conformance with this Opinion has been entered and a copy is attached hereto.


/s/  Donald H. Steckroth

_____

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE


Dated:  September 29, 2006